[No. AO15002. First Dist., Div. Three. June 16, 1983.]

JOHN HOLIWAY, an Incompetent Person, etc., et al.,
Plaintiffs and Appellants, v.
MARION WOODS, as Director, etc., Defendant and Respondent;
COUNTY OF ALAMEDA, Intervener and Respondent.

**[Opinion certified for partial publication.[1]]**

[1]The introductory Discussion and the substantial evidence and standing-on-appeal issues are not published, because they do not meet the standards for publication contained in California Rules of Court, rule 976(b). Since the facts relevant to the publishable issues are mentioned in the discussions of the issues, the general Statement of Facts is also not published. (Cal. Rules of Court, rule 976.1.)

**COUNSEL**

Nathan A. Richardson for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Richard J. Moore, County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Intervener and Respondent.

**OPINION**

**WHITE, P. J.—**

### Statement of the Case

This is an appeal by John Holiway and the estate of Minnie Holiway from the judgment of the superior court denying a petition for writ of mandate to set aside decisions by the State Department of Social Services which sustained the action of Alameda County (hereafter respondent/intervener county or the county) in discontinuing certain services to the Holiways. The appeal is being

brought by Maree Karriem (hereafter appellant Karriem or appellant), the Holiways' daughter, as guardian ad litem for John Holiway, an incompetent, and as personal representative of the estate of Minnie Holiway. Code of Civil Procedure sections 1110 and 1064 give this court jurisdiction to hear such an appeal. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 178, p. 3938.)

### Statement of Facts[2]

" . . . . . . . . . . . . . . . . . . . . .

### Discussion[5]

" . . . . . . . . . . . . . . . . . . . . .

1. *That there was no credible evidence that the Holiways had received the services the county had paid for.*[6]

" . . . . . . . . . . . . . . . . . . . . .

2. *Does a foreign conservatorship confer authority in this state to represent an incompetent in applying for social services benefits?*

All the records on file with the county regarding the Holiways had only appellant's signature; nothing had ever been signed by the Holiways themselves. Appellant was appointed conservator of the estate and person of her father in Illinois in June 1971. These are undisputed facts. The task of the reviewing court is to determine their effect as a matter of law. (6 Witkin, Cal. Procedure, *supra,* Appeal § 263; 5 Witkin, Cal. Procedure, *supra,* Extraordinary Writs, § 218.)

Both appellant and respondent-intervener cite Code of Civil Procedure section 1913 to support their respective positions. At the time that the county acted to discontinue In-Home Supportive Services (IHSS) benefits to the Holiways, the statute read in relevant part: ". . . the authority of a guardian or committee, or of an executor or administrator does not extend beyond the jurisdiction of the Government under which he was invested with his authority." (Code Civ. Proc., § 1913.)

Appellant points out that "conservator" was not mentioned in the statute at the time benefits were cut off, although an amendment effective in 1981 added it to the law. (Stats. 1979, ch. 730, § 34.) She argues that she was therefore a recognized conservator in California at least until this law took effect.

---

[2]See footnote 1, *ante,* page 1006.

[5]See footnote 1, *ante,* page 1006.

[6]See footnote 1, *ante,* page 1006.

At first glance this is a plausible argument. █ It is a general rule of statutory construction that "the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights." (1A Sutherland, Statutory Construction (4th ed. 1972) Amendatory Acts, § 22.30, p. 178, fns. omitted; see also *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 231-232 [273 P.2d 5]; *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 228 [111 Cal.Rptr. 398].)

This particular amendment, however, came in the context of a massive revision of various laws governing guardianship, conservatorship, and other protective proceedings. (Stats. 1979, ch. 730.) The only change in the section under scrutiny aside from making it gender-neutral, was to add conservators to the list of foreign legal representatives whose authority is not recognized in this state. (Code Civ. Proc., § 1913.)

The previous wording of the section was enacted in 1872 and had never been amended until this change was made. (Stats. 1979, ch. 730, § 34, p. 2482.) In 1872 there was no such thing as a conservator in California. Until 1957 guardianship proceedings were the only way a party could "assume administration of the estate of an adult unable to manage his affairs [citation]. . . ." (*Board of Regents* v. *Davis* (1975) 14 Cal.3d 33, 37 [120 Cal.Rptr. 407, 533 P.2d 1047].) At that time conservatorship was established "as an alternative to guardianship to avoid . . . the 'stigma' of the label 'incompetency.' In such a situation *a conservator is merely another linguistic designation for a guardian.*" (*Id.,* at p. 38, italics added.)[7]

█ The addition of the word "conservator" to the statute, therefore, was not a "material change." (See treatise and cases cited *ante* in discussion of statutory construction; see also *People* v. *Weitzel* (1927) 201 Cal. 116, 118-119 [255 P. 792, 52 A.L.R. 811].) It was rather a change made by the Legislature in an effort to rationalize the laws of the state in view of significant recent revisions to the Probate Code and other changes such as the creation of conservatorships. (See Law Revision Com. com. to Code Civ. Proc., § 1913.)[8] The substantive law with regard to disability of foreign conservators was not changed by the amendment. We conclude, therefore, that appellant's Illinois conservatorship over her father gave her no special authority in this state with

[7]On the letters of conservatorship from Illinois, John Holiway is labeled an incompetent. This would seem to indicate that a "conservator" under Illinois law may be substantively the same as a "guardian" in California, since here the estate of an "incompetent" has been, and still is, protected by guardianship.

[8]See also Deering's Annotated Elections Code, section 707.5, (1981 pocket supp.) page 23; Deering's Annotated Corporations Code, section 413 (1981 pocket supp.) page 31; Deering's Annotated Financial Code section 764 (1983 pocket supp.), page 44 for examples of mere addition of word "conservator" which were accomplished by the same act of the Legislature.

regard to either parent. (Cf. *Lewis* v. *Adams* (1886) 70 Cal. 403 [11 P. 833].) "Section 1913 is merely declaratory of the rule of common law that an executor or administrator, *as such,* has no power which he can employ extraterritorially." (*Id.*, at p. 411.)

3. *Does Welfare and Institutions Code section 11054 authorize a third party to apply for social services benefits on behalf of an incompetent where no guardian or conservator has been appointed?*

Appellant argues in the alternative that if the Illinois conservatorship is not recognized, her actions on behalf of her parents were authorized under Welfare and Institutions Code section 11054 which provides in pertinent part: "Whenever the applicant himself is incapable of completing the required affirmation, and no guardian or conservator of his estate has been appointed, the affirmation may be completed on his behalf by a relative or close personal friend or a representative of a public agency who has all necessary knowledge regarding the applicant's circumstances and is willing to affirm thereto."

The county argues, however, that this section must be considered in relation to Welfare and Institutions Code section 10002. At the time appellant applied for benefits the statute read: "When an applicant for or recipient of public social services is incapable of managing his own resources and planning or carrying out arrangments for his own care and maintenance, and the applicant or recipient cannot secure the services of a private attorney, the county counsel at the request of the county department, or the district attorney, if a county counsel does not exist, shall initiate and carry out proceedings for the appointment of a public or private guardian or public or private conservator, or for changing the form of legal protection when this is indicated."

It is a principle of statutory construction that apparently conflicting code sections should be reconciled, if possible, so that both may be given effect. (1A Sutherland, Statutory Construction, *supra,* Codes, Compilations and Revisions, § 28.12, p. 331.)

We do not agree with the county that the phrase "and no guardian or conservator of his estate has been appointed" in Welfare and Institutions Code section 11054 reflects the Legislature's contemplation that a guardian or conservator would necessarily be appointed where the appropriate criteria existed. Instead we read section 10002 merely as requiring the county counsel to make such appointment where the county department had requested it. But the statute did not and still does not *require* that the county department make such a request. In the absence of a request there would be no appointment under this section. Following the county's analysis we would have to con-

clude that in such a situation an incompetent person could not apply for, and hence could not receive, public social services at all.[9] Such a result could not have been the Legislature's intent.

Perhaps the law *should* require that where a person is unable to apply for benefits because of incompetence rather than mere physical disability a conservator *must* be appointed to make such application. The county's strained analysis apparently seeks this rule. But the statutes involved here simply do not support this interpretation. Any change to a rule such as the county proposes is in the province of the Legislature.

 The two statutes are clear on their faces and easily harmonized. The effect of Welfare and Institutions Code section 10002 on section 11054 is simply this: if a guardian or conservator has been appointed, he or she is the proper party to apply for benefits, but otherwise a person meeting the criteria set out in section 11054 may apply on behalf of an incompetent.

Thus the trial court's determination that appellant Karriem had no authority to represent her parents in applying for IHSS benefits was not correct, since she was authorized under Welfare and Institutions Code section 11054 to do so.

4. *Did appellant Karriem lack the capacity to represent the estate of Minnie Holiway in the instant appeal.*[10]

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### Conclusion

The court's ruling that appellant Karriem did not have the authority to represent the Holiways in dealings with the State Department of Social Services and the county welfare department was in error. The decision of the superior court in denying the writ of mandate is affirmed, however, since in the unpublished portion of the opinion we conclude that substantial evidence supports the superior court's determination that the authorized services were not in fact provided to the Holiways.

Feinberg, J., and Barry-Deal, J., concurred.

---

[9]This section was amended by Statutes 1980, chapter 415, section 2, to change the phrase "*shall* initiate" to "*may* initiate." We make no comment on the effect of this change since all the relevant proceedings in the instant case occurred before it was enacted, except to observe that it makes the appointment of a guardian or conservator under this section even less certain.

[10]See footnote 1, *ante,* page 1006.